Case 04-15170   Filed 05/06/08   Doc 85

FILED
MAY -6 2008
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re ) Case No. 04-15170-B-13
)
Jose Percolla and )
Sylvia Percolla, )
)
Debtors. )
_____)

**MEMORANDUM REGARDING APPLICATION
FOR PAYMENT OF UNCLAIMED FUNDS**

This memorandum is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

JM Partners LLC, on behalf of Francisco and Amparo Patino ("Patinos") has filed an Application for Payment of Unclaimed Funds (the "Application") relating to monies which the chapter 13 trustee deposited with the Treasurer of the United States pursuant to 11 U.S.C. § 347(a) (the "Unclaimed Funds"). When Jose and Sylvia Percolla (the "Debtors") were in bankruptcy, the Patinos held a fully secured mortgage against their residence. The Unclaimed Funds represent post-petition mortgage payments which the Debtors were required to pay through the chapter 13 trustee, during the term of their case. Because the Application does not establish that the Patinos are still entitled to receive any mortgage payments, the Application will be denied.

///

**Background.**

This bankruptcy was filed under chapter 13 in June 2004. M. Nelson Enmark, Esq., was appointed as the chapter 13 trustee ("Enmark"). The bankruptcy schedules report that the Patinos held a fully secured mortgage lien against the Debtors' residence located in Bakersfield, California (the "Residence").[1] The Patinos never filed a proof of claim in the bankruptcy case.[2] The Debtors filed a proposed chapter 13 plan which shows that the regular post-petition monthly mortgage payments to the Patinos were $500 per month (the "Mortgage Payments"). The proposed chapter 13 plan also states that the mortgage was in default at the commencement of the case and that the Patinos were owed an arrearage of $8,614.64 to be paid through the plan (the "Arrearage Claim").

The Debtors never confirmed a chapter 13 plan providing for payment of any money to the Patinos on account of their Arrearage Claim. However, pursuant to this court's General Order 03-03, the Debtors were required to make the Mortgage Payments to the Patinos, with funds paid to Enmark. The Debtors' obligation to make Mortgage Payments began in the first month after the petition was filed and continued each month thereafter, so long as the case remained in chapter 13, whether a chapter 13 plan was confirmed or not. At least some of the Mortgage Payments were funded by the Debtors, and Enmark apparently did send those Payments to the Patinos at the address listed in the bankruptcy schedules. However, at some point, the Patinos moved to a new address and stopped receiving their Mortgage Payments from Enmark. After 90 days, Enmark stopped payment of one or more checks issued to the Patinos pursuant to 11 U.S.C. § 347(a) which provides in pertinent part:

---

[1] The bankruptcy schedules state the value of the Residence to be $150,000. The mortgage debt to the Patinos is stated in amount of $105,000.

[2] The Application erroneously states that the Patinos moved to a new address after they filed their proof of claim and neglected to update their address with the court. The record reflects that they never filed a proof of claim, nor did they lodge anything with the court to establish their address. Enmark apparently distributed the post-petition mortgage payments based upon information provided by the Debtors in their bankruptcy schedules.

2

> Ninety days after the final distribution under section 726, 1226, or 1326 of this title in a case under chapter 7, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28.

This bankruptcy case was dismissed in December 2004. In January 2005, Enmark filed his Preliminary Final Report and Account showing $105,000 allowed on the Patinos' mortgage claim and $5,255.85 actually paid to the Patinos on account of the Mortgage Payments. Because the plan was not confirmed, nothing was paid to the Patinos on account of their Arrearage Claim. In April 2005, Enmark deposited $3,255.85 with the clerk of the court representing one or more uncashed checks that were sent to the Patinos (the "Unclaimed Funds"). The bankruptcy case was closed and the Final Decree was entered in July 2005.

**Procedure for Recovering Unclaimed Funds.**

Once the Unclaimed Funds were sent to the clerk of the court, they were deposited with the Treasurer of the United States and became subject to the jurisdiction of 28 U.S.C. § 2041 which provides in pertinent part:

> All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.
>
> This section shall not prevent the delivery of any such money *to the rightful owners* upon security, according to agreement of parties, under the direction of the court. (Emphasis added.)

Unclaimed funds deposited with the Treasurer of the United States remain so deposited until claimed. The trustee is required to file with the clerk of the court a list of all known names and addresses of the entities and the amounts which they may be entitled to claim from the money that is deposited pursuant to section 347. *Fed.R.Bankr.P. 3011*. Unclaimed funds that have been deposited in the court for five years shall escheat to the United States pursuant to 28 U.S.C. § 2042. No money paid into the court shall be withdrawn except by court order. An entity entitled to any money deposited with the court may, on petition to the court, and *"full proof of the right thereto,"* obtain an order

1 directing payment of said money. *Id.* (Emphasis added.)

2 　　　　The procedure for a proper claimant to recover its money is prescribed in this
3 court's Guidelines Pertaining to Applications for Payment of Unclaimed Funds, Revised
4 December 19, 2007, and is summarized as follows:

5 　　　　A request for an order releasing unclaimed funds shall be made in a written
6 petition, application, or motion in compliance with Local Bankruptcy Rule 9014-1. The
7 burden of proving an entity's entitlement to unclaimed funds rests with the entity. An
8 Application for payment of unclaimed funds must be supported by competent evidence; it
9 must comply with *Fed.RBankr.P.* 9004(a) & (b); and it must comply with the general
10 requirements for forms set forth in Federal and local rules of bankruptcy procedure. The
11 Application must contain, *inter alia*, the following information:

12 　　　　a.　　The exact dollar amount of the dividend check(s) issued by the trustee to the original creditor/claimant and the date that the funds were deposited with
13 　　　　　　　the court as unclaimed funds;

14 　　　　b.　　The name, address and telephone number of the original claimant (including documentation establishing identity, such as; a birth certificate,
15 　　　　　　　unexpired passport, or valid driver's license) and a brief history of the original creditor/claimant (from filing the claim to present) which includes,
16 　　　　　　　if applicable, any sale, merger, consolidation, buy-out, dissolution, marriage or death of the original claimant together with any supporting
17 　　　　　　　documentation;

18 　　　　c.　　The petitioner's/applicant's/movant's identity and relationship to the original claimant;
19
20 　　　　d.　　If the petitioner/applicant/movant is the claimant's agent, a statement that the claimant has authorized it to collect the funds, supported by an original
　　　　　　　power of attorney containing the claimant's notarized signature and such a
21 　　　　　　　grant of authority;

22 　　　　e.　　If the petitioner/applicant/movant is the claimant's agent, the date copies of the petition/application/motion and any supporting documents were mailed
23 　　　　　　　to the claimant; and

24 　　　　f.　　The date copies of the petition/application/motion and any supporting documents were mailed to the U.S. Attorney.
25

26 　　　　An application for unclaimed funds may be filed by a representative of the original
27 claimant. However, any order authorizing distribution of unclaimed funds must require
28 that the check be issued payable to the claimant and the representative applicant jointly so

that both must endorse it. Upon receipt of an application for payment of unclaimed funds, and payment of the appropriate fees, the Financial Administrator of the court will review the application and accompanying documents for completeness, determine whether the notice requirements have been met, and verify that the unclaimed funds remain on deposit and that they are being paid to the proper creditor or to an agent entitled to receive unclaimed funds on behalf of the proper creditor. The application, the supporting documentation and the proposed order are then presented to the appropriate judge.

**The Application Does Not Show That Any Post-petition Mortgage Payments are Still Owed.**

The court's analysis here focuses on the terms "rightful owner" and "right thereto" as prescribed in 28 U.S.C. §§ 2041 & 2042. In support of the Application, the Patinos submitted the documents required by the court's Guidelines. However, the Debtors did not get a discharge of their debt to the Patinos, and they did not confirm a chapter 13 plan providing for the payment of any monies on the Arrearage Claim. The Patinos' mortgage claim was fully secured by the Residence. As fully secured creditors, the Patinos have always had recourse against the Residence, and they are not entitled to receive the Mortgage Payments that were returned to Enmark unless those Mortgage Payments are still owed. The Patinos have that burden of proof.

More than three years have passed since this bankruptcy case was dismissed. Once the case was dismissed, the Patinos had a right to demand full payment of the Arrearage Claim and regular Mortgage Payments *from the Debtors*. If the Arrearage was not cured, then the Patinos had a right to foreclose their lien against the Residence in satisfaction of the secured obligation. Based on the passage of time, the court can infer that either the Debtors have resolved any outstanding default in the mortgage, or the lien has been foreclosed through the power of sale in the mortgage documents. Under either scenario, the Patinos are no longer entitled to collect the Mortgage Payments that were returned to Enmark more than three years ago. Under California law, a private nonjudicial

foreclosure through the power of sale in the lien documents bars the mortgagee from receiving any additional money on account of its mortgage claim - the debt is deemed fully satisfied. Cal.CodeCiv.P. § 580d; *Cornelison v. Kornbluth*, 15 Cal.3d 590, 602 (1975). Unless the Patinos can show that they are still entitled to receive the Mortgage Payments, and can account for how those monies would be applied to the mortgage, then the Unclaimed Funds should be returned to the Debtors.

The Debtors did not receive any notice that some of their Mortgage Payments were unclaimed by the Patinos. The Debtors did not receive any notice that the Unclaimed Funds were sent to the clerk of the court. The Application was not served on the Debtors and they have not had an opportunity to oppose the Application or respond with an accounting to show whether any money is still owed to the Patinos.[3] The Application reveals nothing about the current status of the Residence or the Patinos' fully secured mortgage.

**Conclusion.**

In summary, it appears to the court that the Debtors may be the proper parties to claim the Unclaimed Funds. At the very least, the Debtors are entitled to receive notice of the Patinos' Application and an opportunity to assert their own claim for return of the monies. The Debtors may submit an application for release of the Unclaimed Funds, either by stipulation with, or on notice to the Patinos. If the Patinos disagree, then the matter can and should be resolved with a noticed motion.

Based on the foregoing, the Patinos have not sustained their burden of proof to show that they are still entitled to receive the Unclaimed Funds. Accordingly, the Application for Unclaimed Funds submitted by JM Partners LLC, on behalf of Francisco

---

[3] The Debtors received a copy of the Trustee's Preliminary Final Report and Account showing monies paid to the Patinos on account of the mortgage, but there is nothing in the system that required Enmark to give notice that some of the checks were uncashed by the Patinos, or that Enmark had deposited some of the Mortgage Payments with the clerk of the court. The Debtors would have to initiate a search of the court's registry to determine if there are any unclaimed funds on account of their bankruptcy case.

6

and Amparo Patino will be denied without prejudice. The Patinos and/or the Debtors may file a motion on notice to the other party for an order directing release of the Unclaimed Funds supported by proper evidence as to whom they should go to.

Dated: May __6__, 2008

*(signature)*
W. Richard Lee
United States Bankruptcy Judge